IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

SHERRY PRITCHETT, d/b/a
PROFESSIONAL COUNSELING &
MEDICAL ASSOCIATES,

  Plaintiff/Counter-Defendant,

v.                  No. 1:18-cv-01093-JDB-jay

STEVE PROSSER and RINA PROSSER,

  Defendants/Counter-Plaintiffs.

---

ORDER GRANTING DEFENDANTS/COUNTER-PLAINTIFFS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT AND REFERRING COUNTER-PLAINTIFF RINA PROSSER'S
CLAIM TO THE MAGISTRATE JUDGE FOR A HEARING ON DAMAGES

---

  Before the Court are the June 10, 2019, motions of Counter-Plaintiffs, Rina Prosser and Steve Prosser, for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Entries "D.E." 72, 73.) Counter-Defendant, Sherry Pritchett, responded to both motions, (D.E. 85, 86), and Rina Prosser filed a reply, (D.E. 87), making the matter ripe for disposition. For the reasons discussed below, the motions are GRANTED.

### I. FACTUAL BACKGROUND

  The claims in this case arise out of a business relationship turned sour. Except as otherwise noted, the following facts are undisputed. Counter-Defendant is the sole proprietor of Professional Counseling and Medical Associates ("PCMA"). (D.E. 85-1 at PageID 483) Counter-Plaintiff, Rina Prosser ("R. Prosser"), is an advanced practice nurse licensed in the State of Tennessee. (*Id.* at PageID 482.) On March 9, 2015, Pritchett and R. Prosser entered into an independent contractor agreement whereby R. Prosser agreed to provide "professional advanced practice nursing services"

1

for PCMA. (*Id.* at PageID 483.) Under the agreement, Counter-Plaintiff was to be paid "50% of all collections for services provided," and Counter-Defendant assumed responsibility for "providing and paying for billing services, debt collection services, and credentialing services." (D.E. 1-8 at PageID 24; D.E. 85-1 at PageID 483.) The agreement also required thirty-days written notice to terminate the relationship. (D.E. 1-8 at PageID 24.) As time went on, however, Pritchett's business began "going under financially." (D.E. 72-2 at PageID 361 (Sherry Pritchett Dep. at 32, lines 12–22).)

On May 12, 2017, without prior notice, Counter-Defendant terminated the independent contractor agreement via a letter delivered to Counter-Plaintiff's husband, Steve Prosser ("S. Prosser"). (D.E. 85-1 at PageID 484; D.E. 85-3.) It is further undisputed that Pritchett, as she acknowledged in the termination letter, in her deposition testimony, and in her response, owes R. Prosser money pursuant to their agreement. (D.E. 85-1 at PageID 484–85; D.E. 85-3 at PageID 494; D.E. 72-2 at PageID 364.) Initially, Counter-Defendant wrote checks addressed to Counter-Plaintiff and gave them to her certified public accountant and financial advisor, Tom Beasley, to deliver to R. Prosser. (D.E. 85-1 at PageID 485.) Beasley did not transfer these checks to R. Prosser, however, because "Pritchett did not have sufficient funds in her bank account." (*Id.*) Rather, Beasley advised Counter-Defendant to setup a payment plan with Counter-Plaintiff. (*Id.*) According to Pritchett's deposition testimony, she also owes R. Prosser money for collections received after May 12, 2017. (D.E. 72-2 (Sherry Pritchett Dep. at 47–54).)

In sum, it is undisputed that Counter-Defendant owes Counter-Plaintiff money for services performed pursuant to their agreement and that Counter-Defendant has not made any payments to her. What is disputed, however, is the amount owed. Based on the deposition of, and a financial report prepared by, Beasley, R. Prosser avers that Pritchett owes her $40,889.76 in damages from

the breach. (D.E. 72-1 at PageID 351–52.) Counter-Defendant argues that Beasley's report is incorrect and that Counter-Plaintiff's damages should be reduced by certain "insurance overpayments" that Counter-Defendant had to repay due to Counter-Plaintiff's "miscoded patient claims." (D.E. 85-1 at PageID 487–88; D.E. 85-8 at PageID 508.)

During this time period, Pritchett also had an employment relationship with Counter-Plaintiff, S. Prosser. Although the exact dates of his employment are disputed, the parties appear to agree that it was sometime between December 2016 and May 2017.[1] Regardless, Counter-Defendant provided employer-sponsored health insurance to Counter-Plaintiff and his family during his employment. (D.E. 86-1 at PageID 532.) S. Prosser paid his family's health insurance premiums directly to Pritchett who submitted the payments to the insurance company. (*Id.*) It is further undisputed that Counter-Plaintiff made two payments of $1,358 to Counter-Defendant for health insurance premiums in May 2017.[2] (*Id.* at 532–33; D.E. 73-2 (Sherry Pritchett Dep. at 56–58).) According to Pritchett, the insurance company cancelled the group policy on March 31, 2017, and refunded the May payments to her in July or August 2017. (D.E. 86-1 at PageID 532; D.E. 73-2 (Sherry Pritchett Dep. at 57–58).) Counter-Defendant does not dispute that she never refunded to S. Prosser the $2,716 he remitted to her for insurance purposes, (D.E. 86-1 at PageID

---

[1] S. Prosser's countercomplaint alleges that he was a "W-2 employee of Sherry Pritchett" between March 2015 and May 2015. (D.E. 18 at PageID 107.) Counter-Defendant admits this allegation in her answer. (D.E. 23 ¶ 1.) In Pritchett's deposition, however, she claimed that Counter-Plaintiff "became an employee for insurance purposes in January 2017 through May 2017." (D.E. 73-2 at PageID 429 (Sherry Pritchett Dep. at 55).) Nevertheless, in S. Prosser's motion for summary judgment, he asserts that Counter-Defendant employed him from March 2015 through May 12, 2017. (D.E. 86-1 at PageID 531.) In Pritchett's response, she again changes her position and contends that S. Prosser was employed from December 2016 to March 2017. (D.E. 86-1 at PageID 532.)

[2] According to Counter-Defendant, Counter-Plaintiff did not pay the April premium, which is why he made two payments in May. (D.E. 73-2 at PageID 429–30 (Sherry Pritchett Dep. at 56–57).)

3

533; D.E. 73-2 (Sherry Pritchett Dep. at 58)), yet she insists that the Prossers, "as a marital unit," would be unjustly enriched if she is required to repay this sum. (D.E. 86-5 at PageID 549.)

## II.   PROCEDURAL HISTORY

On May 30, 2018, Sherry Pritchett filed a complaint against Rina Prosser, Steve Prosser, and four other defendants. (D.E. 1.) The Prossers filed their answers on July 28, 2018, and each asserted counterclaims against Pritchett. (D.E. 17, 18.) Subsequently, Counter-Defendant voluntarily dismissed her claims against all six defendants, leaving only Counter-Plaintiffs' claims against Pritchett. (D.E. 30, 31, 32, 39, 41.) On March 4, 2019, the Court granted Pritchett's counsel's motion to withdraw and substitute counsel. (D.E. 50.) Shortly thereafter, Counter-Plaintiffs moved the Court to compel discovery, (D.E. 53), and Counter-Defendant asked the Court for an extension of time to complete discovery, (D.E. 59), which the Court referred to Magistrate Judge Jon A. York, (D.E. 57, 60). Magistrate Judge York granted both motions. (D.E. 64.)

On June 10, 2019, Counter-Plaintiffs both filed motions for partial summary judgment—R. Prosser requesting summary judgment on her breach of contract claim, and S. Prosser seeking summary judgment on his unjust enrichment claim. (D.E. 72, 73.) Pritchett then filed motions to extend the discovery deadline and to require further discovery, (D.E. 75, 76), and the Court referred those matters to Magistrate Judge York for determination, (D.E. 83). Counter-Defendant filed her responses to Counter-Plaintiffs' motions on July 8, 2019, (D.E. 85, 86), and R. Prosser filed a reply on July 22, 2019, (D.E. 87). Subsequently, on August 16, 2019, Magistrate Judge York denied Pritchett's second motion to extend the discovery deadline. (D.E. 89.) Accordingly, the remaining motions are ripe for decision.

## III. LEGAL STANDARD

Under Rule 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party "has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (quoting *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 551 (6th Cir. 2002)). Conversely, "[t]here is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013) (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A court's function at the summary judgment stage is not to "weigh the evidence and determine the truth of the matter"; rather, it is "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 748 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 255) ("Credibility determinations . . . and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

If the motion is properly supported, "the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008) (citation omitted). Thus, "in order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support her position; a mere 'scintilla of evidence' is insufficient." *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003)). Although a

court does not weigh the evidence at this stage, it "must view all evidence and draw any reasonable inferences therefrom in favor of the nonmoving party." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 426 (6th Cir. 2014) (citing *Matsushita*, 475 U.S. at 587). "[C]onclusory allegations, speculation, and unsubstantiated assertions," however, "are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment." *Jones*, 677 F. App'x at 282 (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

### IV. ANALYSIS

As an initial matter, the Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1367. In response to the present motions, Pritchett briefly asserts that the Court lacks subject matter jurisdiction because she voluntarily dismissed all her claims, "leaving only the [Counter-Plaintiffs'] claims that Pritchett owe[s] them money, a non-federal question." (D.E. 86-5 at PageID 548.) In an action over which the district court has original jurisdiction, it also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). "Claims form part of the same case or controversy when they derive from a common nucleus of operative facts." *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 588 (6th Cir. 2016) (quoting *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir. 2004)). "This requirement is met when state and federal law claims arise from the same contract, dispute, or transaction." *Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350–51 (1988)).

In the present case, Pritchett asserted five causes of action against R. Prosser that derived from their independent contractor agreement and business relationship, including a federal claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. (*See* D.E. 1.) Counter-Defendant also asserted these claims against S. Prosser, which stemmed from the same series of transactions

6

and occurrences, (*see id.*), and Counter-Plaintiffs' counterclaims arise from the same dispute, (*see* D.E. 17, 18; *supra* Part I).[3] Moreover, the parties have undertaken significant discovery to date, and trial is set for this October. Therefore, it is appropriate for the Court to exercise jurisdiction over Counter-Plaintiffs' remaining claims. The Court now turns to Counter-Plaintiffs' motions for partial summary judgment.

*(A) Rina Prosser's Motion for Partial Summary Judgment*

R. Prosser seeks summary judgment on her breach of contract claim against Pritchett. Because this claim arises under state law, Tennessee law applies. In Tennessee, the elements of a breach of contract claim are: (1) the existence of a contract; (2) a breach of the contract; and (3) damages that flow from the breach. *Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship*, 79 F.3d 496, 514 (6th Cir. 1996); *accord Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006).

Neither party disputes that they entered into an enforceable contract. (*See* D.E. 72-1 at PageID 348; D.E. 85-1 at PageID 483.) R. Prosser alleges that Pritchett breached the independent contractor agreement "by terminating it without the required 30-day prior notice" and by failing to pay her money owed under the agreement. (D.E. 72-4 at PageID 407–08.) To support this contention, Counter-Plaintiff points to the contract itself, (D.E. 72-2 at PageID 372–73), the termination letter received by Counter-Plaintiff from Counter-Defendant,[4] (D.E. 72-2 at PageID 374–76), and the deposition testimony of Counter-Defendant, (D.E. 72-2 at PageID 364–67

---

[3] The Court also notes that R. Prosser's first counterclaim arises under federal law—the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

[4] In the termination letter, Pritchett stated, "I do understand that you are owed money and will work to resolve this as quickly as possible. I can assure you that I have no intention of cheating you or not paying you the amount that is owed to you . . . . I will make payments to you on the amount owed until I can make other arrangements to pay the entire amount." (D.E. 72-2 at PageID 376.)

(Sherry Pritchett Dep. at 42–54)). In her response to R. Prosser's motion, Pritchett admits that she terminated Counter-Plaintiff without notice on May 12, 2017, that she owed R. Prosser money for services performed prior to the termination, and that she did not pay her at the time because she "did not have sufficient funds in her bank account." (D.E. 85-1 at PageID 484–85.) Because Counter-Defendant has not offered any evidence to create a genuine issue of material fact as to the first two elements of Counter-Plaintiff's breach of contract claim, the only question remaining is the amount of damages caused by the breach.

Relying on the deposition testimonies of Beasley and Pritchett, R. Prosser insists that Counter-Defendant owes her $40,889.76. (D.E. 72-1 at PageID 350–52.) To support her claim, Counter-Plaintiff points to two financial reports created by Beasley on May 12, 2017, and January 23, 2019. (D.E. 72-3 at PageID 400–01.) The May 2017 report shows an outstanding balance of $13,540.18 owed to R. Prosser and indicates that Counter-Defendant paid Counter-Plaintiff for all collections received prior to May 2017. (*Id.* at PageID 400.) The January 2019 report, however, suggests that Pritchett owes R. Prosser a total of $27,624.06 for the months of April 2017 to August 2017, which attributes $12,191.34 to the month of April 2017 that was not listed on the May 2017 report. (*Compare id.* at PageID 400 *with id.* at PageID 401.) In addition to this amount, Counter-Plaintiff avers that Beasley omitted $12,981.78 from the January 2019 report for seven unpaid payments owed to Counter-Plaintiff prior to 2017, and $283.92 for collections Counter-Defendant received in October and November 2017. (D.E. 72-4 at PageID 405–06 (citing Tom Beasley Dep. at 25–26, 35–36, 50–51).)

In response, Pritchett essentially argues that she should not have to pay R. Prosser any money because Counter-Defendant had to repay money to insurance companies due to R. Prosser "intentionally or negligently mis-coding her procedures for billing purposes." (D.E. 85-8 at

8

PageID 507.) Counter-Defendant attempts to rely on a financial spreadsheet prepared by a different accountant, Amanda Lambdin, and asserts that Counter-Plaintiff was overpaid by $23,077.50 and would therefore be unjustly enriched if she is required to pay damages. (*Id.* at 507–08; D.E. 85-6) Pritchett also maintains that Beasley "became totally confused in his deposition and when read as a whole, it is obvious that his numbers are not accurate." (D.E. 85-8 at PageID 507.)

Counter-Plaintiff contends that the Court should disregard Counter-Defendant's "setoff" defense for two reasons. First, R. Prosser avers that Pritchett waived this defense by failing to plead it in her answer. (D.E. 87 at PageID 581.) Second, Counter-Plaintiff argues that Counter-Defendant's disclosure of her expert witness, Lambdin, was untimely as the deadline for expert disclosures had expired. (*Id.*)

"In responding to a pleading," Rule 8 requires a party to "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. Rule 8(c). In general, failing to plead an affirmative defense in the first responsive pleading to a complaint results in a waiver of that defense. *Norfolk So. Ry. Co. v. Allied Erecting & Dismantling Co., Inc.*, 775 F. App'x 178, 189 (6th Cir. 2019) (citing *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004)). When a party fails to raise an affirmative defense until after the close of discovery, a finding of waiver is appropriate. *See Henricks v. Pickaway Corr. Inst.*, 782 F.3d 744, 751 (6th Cir. 2015) (citation omitted) ("A district court does not abuse its discretion when, even without a showing of prejudice, it finds that a defendant who has failed to show 'that it even made a good faith effort to comply with the standard procedure for raising affirmative defenses' has waived its defense.'"). "Federal law governs whether a defense has been waived in federal court, but state law governs which defenses must be pleaded affirmatively to avoid waiver." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d

656, 680 (6th Cir. 2018). Under Tennessee law, setoff is an affirmative defense to breach of contract. *See Shelbyville Hosp. Corp. v. Mosley*, No. 4:13-CV-88, 2017 WL 5586729, at *3–4 (E.D. Tenn. Nov. 20, 2017) (citing *W.R. Naylor & Son Constr. Co. v. Campbell*, 1989 WL 18770, at *1 (Tenn. Ct. App. Mar. 3, 1989)).

In this case, Counter-Defendant did not plead the affirmative defense of setoff in her answer to R. Prosser's countercomplaint and voluntarily dismissed all her claims against Counter-Plaintiff. (D.E. 22; D.E. 41.) Moreover, the deadline for amending pleadings expired on December 31, 2018, (D.E. 43), and Pritchett did not assert the defense of setoff until July 8, 2019—nearly two months after the extended discovery deadline—in her response to R. Prosser's motion for summary judgment, (*see* D.E. 85). Even further, the unsworn report offered by Counter-Defendant is dated March 25, 2019, (D.E. 85-6 at PageID 504.); thus, Pritchett could have raised this defense well in advance of July 2019. Accordingly, the Court finds that Counter-Defendant waived the affirmative defense of setoff.

The Court also agrees with R. Prosser's second contention that Counter-Defendant may not rely on the untimely expert opinion of Lambdin to defeat Counter-Plaintiff's motion. Under Rule 26, "a party must disclose . . . the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Pursuant to Rule 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In other words, Rule 37(c)(1) "requires absolute compliance with Rule 26(a), . . . it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'" *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d

776, 782 (6th Cir. 2003) (citation omitted). "A violation is 'harmless' when it is based upon 'an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party.'" *Campos v. MTD Prods., Inc.*, 2009 WL 2252257, at *9 (M.D. Tenn. July 24, 2009) (quoting *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003)); *see also Hardison v. Lois Wagstrom, MD. P.C.*, 2014 WL 7139997, at *7 (M.D. Tenn. Dec. 12, 2014).

According to the Court's scheduling order, the deadline for Pritchett to disclose an expert witness expired on February 25, 2019, the deadline for expert witness depositions ended on March 26, 2019, and the deadline for *Daubert* motions concluded on April 10, 2019. (D.E. 43.) Counter-Defendant retained Lambdin after March 8, 2019, yet she never moved the Court to extend any of these deadlines. (*See* D.E. 85-5 at ¶ 5; D.E. 72-3.) Moreover, Pritchett did not disclose the existence of her expert witness to R. Prosser until April 26, 2019—in an untimely discovery response—even though Lambdin apparently created her report a month earlier. (D.E. 87 at PageID 584–85; D.E. 89.) Nothing in the record suggests that Counter-Defendant's failure to timely disclose her expert was the result of an "honest mistake."[5] Nor can it be said that Counter-Plaintiff had sufficient knowledge of Lambdin's opinions, because the first indication that she might be involved in this case came in the form of an unsworn report provided to Counter-Plaintiff two months after the expert disclosure deadline.[6] (D.E. 87 at PageID 584–85); *see Sommer*, 317 F.3d at 692 (affirming the district court's decision denying the plaintiff's supplemental Rule 26 motion to disclose an expert witness based on the plaintiff's untimely disclosure); *Hardison*, 2014 WL

---

[5] Given that Counter-Defendant has twice moved for an extension of the discovery deadline, (D.E. 59, 75), the Court finds that she had ample opportunity to seek additional time for expert disclosures but failed to do so. (*See also* D.E. 89.)

[6] The Court further notes that Pritchett failed to comply with a prior Order compelling her response to outstanding discovery requests, and that Prosser had timely responded to Pritchett's discovery requests. (D.E. 89.)

11

7139997 at *7. If the Court were to permit Lambdin to testify, R. Prosser would undoubtedly want to depose her and conduct further discovery, which would require the Court to reset the case management deadlines yet again, including the trial date that is set for October. Accordingly, the Court finds that Counter-Defendant's failure to timely disclose her expert witness, as required by Rule 26, is not substantially justified or harmless. Therefore, the exclusion of Lambdin as a testifying expert is warranted here, and the Court will not consider her report in evaluating Counter-Plaintiff's Rule 56 motion.

In sum, Counter-Plaintiff has shown that there is no genuine dispute that a contract existed between the parties and that Counter-Defendant breached this contract. R. Prosser has also established that she incurred damages that flow from the breach, although the exact amount is unclear. Accordingly, the Court GRANTS Counter-Plaintiff's motion for partial summary judgment on her breach of contract claim, and the matter is REFERRED to the magistrate judge for a hearing to determine the amount of damages.

*(B) Steve Prosser's Motion for Partial Summary Judgment*

S. Prosser's motion for summary judgment on his unjust enrichment claim is also governed by Tennessee law. Under state law, the elements of an unjust enrichment assertion are: "(1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of such benefit under such circumstances that it would be inequitable for [her] to retain the benefit without payment of the value thereof." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (internal quotations omitted) (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966)). "The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust." *Id.* "The remedy for unjust enrichment requires that the person who has been unjustly enriched at the expense of another

make restitution to that person." *MDT Servs. Group, LLC v. Cage Drywall, Inc.*, 2015 WL 736932, at *9 (M.D. Tenn. Feb. 20, 2015) (citation omitted).

It is undisputed that S. Prosser paid Pritchett $2,716 for health insurance premiums, that the insurance company cancelled the employer-sponsored health insurance policy, that the insurance company refunded to Pritchett the payments S. Prosser made to her, and that Pritchett never paid over this amount to S. Prosser. (D.E. 86-1 at PageID 532–33; D.E. 73-2 at PageID 429–30 (Sherry Pritchett Dep. at 55–58).) Counter-Plaintiff argues that Counter-Defendant would be unjustly enriched if she is permitted to retain the funds that he paid her for health insurance premiums. (D.E. 73-3 at PageID 442.) Pritchett admitted in her sworn deposition that she did not refund S. Prosser the two payments of $1,358 and agreed that "[t]hose two payments [were] owed" to S. Prosser. (D.E. 73-2 at PageID 430 (Sherry Pritchett Dep. at 58).)

Even with the previous admission, Counter-Defendant now contends that she should not have to reimburse Counter-Plaintiff for this amount. First, Pritchett asserts that S. Prosser "performed no duties or services whatsoever as an employee, but was paid $150.00 a month for a total of $600.00, which at a minimum should be deducted from the amount." (D.E. 86-1 at PageID 533.) Second, Counter-Defendant avers, without citing any legal authority, that Steve and Rina Prosser "should be treated as one for the purpose of determining the total liability" between the parties because they are a marital unit. (D.E. 86-1 at PageID 533.) Thus, according to Pritchett, Counter-Plaintiffs, "as a marital unit," would be unjustly enriched if she is required to repay S. Prosser the insurance premiums, because R. Prosser "owes $23,077.50 to Pritchett." (D.E. 86-5 at PageID 549; D.E. 86-1 at PageID 533.)

Neither of Pritchett's arguments has merit. For the same reasons discussed above, Counter-Defendant has waived the affirmative defense of setoff. Moreover, the Court is unaware of any

13

Tennessee precedent supporting Pritchett's contention that Counter-Plaintiffs should be viewed as a "marital unit" for purposes of evaluating S. Prosser's unjust enrichment claim. Pritchett clearly received a benefit of $2,716 conferred by S. Prosser and she acknowledged that benefit. To allow Counter-Defendant to retain the payment Counter-Plaintiff remitted to her for health insurance premiums would unjustly enrich Counter-Defendant. Accordingly, Prosser has established that there is no genuine dispute of material fact regarding his claim, and Pritchett has failed to offer any evidence to refute this conclusion. Therefore, Counter-Plaintiff's motion for summary judgment is GRANTED.

## V. CONCLUSION

For the foregoing reasons, Counter-Plaintiff Rina Prosser's motion for summary judgment is GRANTED in part and REFERRED to the magistrate judge for a hearing on damages. In addition, Counter-Plaintiff Steve Prosser's motion for summary judgment is GRANTED and Counter-Defendant is ORDERED to pay S. Prosser $2,716.

IT IS SO ORDERED this 20th day of September 2019.

s/ J. DANIEL BREEN<br>
UNITED STATES DISTRICT JUDGE